DR. GLENN W. CHERRY,
CHARLES W. CHERRY, II, ESQ., and
GROUP ASSETS, LLC,

      **Plaintiffs,**

v.                                 **CASE NO. 8:09-CV-0033-VMC-EAJ**

D.B. ZWIRN SPECIAL
OPPORTUNITIES FUND, L.P.,
et al.,

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Before the court are four motions to dismiss: Defendants D.B. Zwirn Special Opportunities Fund L.P., Straight Way Radio, LLC, Bernard Radio, LLC, Daniel B. Zwirn, and Peter Lieberman's (the "Zwirn Defendants") **Joint Motion to Dismiss Amended Complaint** (Dkt. 46), Defendant Ted Bolton's ("Bolton") **Motion to Dismiss, or Alternatively for a More Definite Statement** (Dkt. 90), Defendant Tama Broadcasting, Inc.'s ("Tama") **Motion to Dismiss Amended Complaint** (Dkt. 104), Defendants Black Enterprise/Greenwich Street Corporate Growth Investors, LLC ("BE/GS Investors"), Black Enterprise/Greenwich Street Corporate Growth Partners, L.P. ("BE/GS Partners"), Jeffrey Scott ("Scott"), and Ed A. Williams' ("Williams") **Joint Motion to Dismiss Amended Complaint** (Dkt. 157), and Plaintiffs' responses to these motions (Dkts. 55, 96, 106, 159).[1] Because Defendant Chris McMurray's ("McMurray") **Motion of Joinder in Defendant Zwirn's Motion to**

---

[1] The district judge referred these matters for a report and recommendation (Dkts. 53, 154, 158). See 28 U.S.C. § 636(b).

**Dismiss Amended Complaint** (Dkt. 97) was granted (Dkt. 145), he is a member of the "Zwirn Defendants" as that term is used in this order.[2]

Plaintiffs filed a shareholder's derivative action for the benefit of Defendant Tama against members of Tama's board of directors, executive officers, and senior lenders for violations of state and federal laws (Dkt. 25 at 1). Additionally, Plaintiffs bring a class action on Tama's behalf and other similarly situated persons or entities who obtained financing from Zwirn (Id. at ¶ 8). Plaintiffs assert class action claims against the Zwirn Defendants (Id.).[3]

Plaintiffs allege that Defendants: (1) violated the Equal Credit Opportunity Act through their lending and collection practices, (2) discriminated against Plaintiffs in violation of their civil rights, (3) violated Section 10(b) of the Securities Act of 1934 and Rule 10b-5, (4) violated the Federal Communications Act, (5) breached their fiduciary duties, (6) breached their duty of care and improvidently lent funds to Plaintiffs, (7) breached an implied covenant of good faith and fair dealing, (8) tortiously interfered with Plaintiffs' contractual relations and prospective business, (9) engaged in deceptive and unfair business practices in violation of state law, (10) violated the Florida Whistle-blower's Act, and (11) unjustly enriched themselves by utilizing Plaintiffs' property without paying rent.

The Zwirn Defendants move to dismiss the Amended Complaint because it fails to satisfy

---

[2] Although Plaintiffs allege that David Lee ("Lee") is an officer of D.B. Zwirn Special Opportunities Fund, L.P., there is no evidence that Lee was ever served with the Amended Complaint. Further, Lee is not listed in the caption of the Amended Complaint and Plaintiffs fail to make any specific allegations relating to Lee in their responses to the motions to dismiss. Therefore, to the extent that Lee is a member of the Zwirn Defendants, this Court recommends that any claims against Lee be dismissed.

[3] The second motion to certify the class (Dkt. 36) is pending.

2

the demand requirements of Rule 23.1, Fed. R. Civ. P., and Delaware Chancery Rule 23.1, and because Plaintiffs fail to state any claim upon which relief can be granted. Defendant Bolton seeks dismissal or alternatively a more definite statement of the Amended Complaint because Plaintiffs fail to state a claim upon which relief can be granted. Defendant Tama moves to dismiss the Amended Complaint because Plaintiffs failed to join a necessary indispensable party and fail to satisfy the demand requirements of Rule 23, Fed. R. Civ. P. Finally, Defendants BE/GS Partners, BE/GS Investors, Scott, and Williams move to dismiss or alternatively for a more definite statement of the Amended Complaint because Plaintiffs fail to state a claim upon which relief can be granted.

## I.    BACKGROUND

Plaintiffs Glenn and Charles Cherry are shareholders in Tama (Dkt. 25 at ¶ 3). Glenn Cherry was the Chief Executive Officer ("CEO") of Tama until the Tama board of directors removed him from that position in May 2008 (Id. at ¶¶ 15-16). Glenn and Charles Cherry also formed Group Assets, LLC ("Group Assets"), a Florida limited liability company which leased property for the radio stations and studios owned by Tama (Id. at ¶ 3).

In an effort to expand and enhance its radio broadcasting business, Tama entered into several agreements to secure financing (Id. at ¶¶ 13-14). First, in 2001, BE/GS Partners and BE/GS Investors contracted with Tama to provide Tama with equity financing (Id. at ¶ 13). Under the terms of the agreement, BE/GS Partners and BE/GS Investors could exercise control over Tama's nine radio licenses and assume control over Tama's corporate governance provided the Federal Communications Commission ("FCC") consented to the exchange (Id. at ¶ 14). Second, in 2004, Zwirn loaned Tama and its subsidiaries approximately $22.5 million (Id.). Zwirn secured its loan by placing a security interest and liens on substantially all of Tama's assets, including its nine radio

licenses (Id.).

On July 18, 2006, BE/GS Partners and BG/GS Investors exercised their right to control Tama (Id. at ¶ 16). Zwirn alleged that Tama defaulted on loan payments owed under the financing agreement (Id. at ¶ 17). Plaintiffs contend that Zwirn agreed to a forbearance on the loan in exchange for Tama entering into a restructuring and time brokerage agreement (Id. at ¶ 18). Additionally, Bernard Radio, a Zwirn subsidiary, would assume day-to-day control of Tama's radio station operations (Id.). Tama agreed to let Bernard Radio assume control of Tama's radio station operations but asserted that it maintained ultimate control over personnel, finances, and programming (Id. at ¶19).

Plaintiffs allege that the actions of the Zwirn Defendants were part of a scheme, starting in the third quarter of 2007, to attempt to obtain and exercise control over Tama's radio licenses (Id. at ¶ 20). Plaintiffs filed a complaint with the FCC Enforcement Division claiming that Defendants prematurely assumed control of Tama (Id. at ¶¶ 21-22). Plaintiffs assert Defendants conspired to remove Glenn Cherry as Tama's CEO in retaliation for filing the FCC complaint (Id. at ¶23).

Additionally, Plaintiffs contend that the actions of Defendants damaged the fiduciary relationship between Tama and its two lenders, BE/GS Investors/Partners and Zwirn (Id. at ¶¶ 24-25). Moreover, Plaintiffs allege Defendants attempted to sell Tama's assets in violation of federal law (Id. at ¶ 26). Plaintiffs assert that the Zwirn Defendants embarked on a campaign to market predatory loans to entities similarly situated as Tama, which deprived similarly situated borrowers of any equity in the collateral. (Id. at ¶¶ 28-30). Plaintiffs allege that the Zwirn Defendants' lending practices were a "loan to own" strategy and allowed Defendants to invoke creditor remedies, such as the appointment of receivers (Id. at ¶¶ 30, 36(d)).

## II.    DISMISSAL PURSUANT TO RULE 12(b)(6)

### A.    <u>Standard of Review</u>

To survive Rule 12(b)(6), Fed. R. Civ. P., dismissal, a plaintiff must allege more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The court must view allegations of the complaint in the light most favorable to the plaintiff, find plaintiff's allegations to be true, and accept all reasonable inferences therefrom. <u>Jackson v. Okaloosa County, Fla.</u>, 21 F.3d 1532, 1534 (11th Cir. 1994). However, the "[f]actual allegations must be enough to raise a right of relief above the speculative level." <u>Bell Atl. Corp.</u>, 550 U.S. at 555. Likewise, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts" will subject a complaint to dismissal. <u>Davila v. Delta Air Lines, Inc.</u>, 326 F.3d 1183, 1185 (11th Cir. 2003). Factual allegations do not need to be in detail, but do demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). More simply, factual allegations must permit a court reviewing a motion to dismiss "to draw the reasonable inference that the defendant is liable for the misconduct alleged" under some viable legal theory. <u>Id.</u> In making this ruling, the court is permitted to review documents referred to in the complaint that are central to any claims made by the plaintiffs. <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997).

Before evaluating Plaintiffs' claims, this Court notes that Plaintiffs have failed to include any allegations against Defendants BE/GS Investor, BE/GS Partners, Williams, Scott and Bolton relating to Counts I and V (claims based on violations of the ECOA), Count II (claims based on violations of the Civil Rights Act), Counts III and IV (claims based on violations of the Securities and

Exchange Act), Count VIII (claims based on improvident lending), and Count IX (breach of an implied covenant of good faith and fair dealing). Plaintiffs' responses are of no aid in convincing this Court that these Defendants are in any way involved in the claims listed above. Therefore, Plaintiffs fail to state a claim upon which relief can be afforded as to these Defendants as to those counts.

**B.** **Discussion**

**1.** **Violations of the Equal Credit Opportunity Act**

In Count I, Plaintiffs allege on behalf of Tama that the Zwirn Defendants violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et. seq., by engaging in prohibited lending practices, including a predatory "loan to own" strategy by charging exorbitant fees and interest rates (Dkt. 25 at ¶¶ 33-40). In Count V, Plaintiffs assert that the lending and collection practices of the Zwrin Defendants were a strategy to exploit the unavailability of capital to Plaintiffs and other similarly situated borrowers in violation of the ECOA (Id. at ¶¶ 78-84). Further, Plaintiffs allege that these actions had a disparate impact on them and other similarly situated borrowers (Id. at ¶¶ 36, 80).

The Zwirn Defendants argue that Plaintiffs' claims are barred by the ECOA's two-year statute of limitations. Although Zwirn provided financing for Plaintiffs in 2004, Plaintiffs allege the disparate impact began in the third quarter of 2007 (Dkt. 25 at ¶ 20). The third quarter of 2007 is the first date in which the violation occurred for 15 U.S.C. § 1691e(f) purposes and is well within the two-year statute of limitations period.

Moreover, even if the violation started in 2004 and continued through 2007, Plaintiffs' claim would not be time barred. For purposes of the ECOA, a period of disparate impact is one violation and the date of the violation is determined by the last date of the violation time period. Ramirez v.

GreenPoint Mortgage Funding, Inc., 633 F. Supp. 2d 922, 929-30 (N.D. Cal. 2008) (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 380 (1982)).   Plaintiffs allege that the actions by the Zwirn Defendants were not discrete, separate actions but were continuing violations.  They contend that the Zwirn Defendants were involved in a "loan to own" scheme that extended over a long period of time and required the assistance of many parties to perpetuate.  Therefore, Plaintiffs' claims are within the limitations period and are not time barred.[4]

### 2.   Racial Discrimination under 42 U.S.C. §§ 1981 and 1982

Plaintiffs allege in Count II that the Zwirn Defendants intentionally discriminated against them and other members of the class by charging higher interest rates than those charged to Caucasian broadcasters (Dkt. 25 at ¶ 43).  The Zwirn Defendants argue that Plaintiffs are precluded from asserting in Count II because, among other things, Plaintiffs lack standing.  Plaintiffs rely on their derivative status with Tama in alleging these claims against Defendants (Id. at 3).

"To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation."  Shell Petroleum, N.V. v. Graves, 709 F.2d 593, 595 (9th Cir. 1983).  An officer or stockholder cannot bring an action to redress an injury to the corporation even though the value of their stock is impaired as a result of the injury.  Gregory v. Mitchell, 634 F.2d 199,  202 (5th Cir. 1981).[5]  This rule has been extended to civil rights actions

---

[4] Nonetheless, Plaintiffs' ECOA claims are due for dismissal on other grounds.  See Section III.B, infra.

[5] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, Ala., 661 F.2d

brought by shareholders claiming injury to the corporation. Id.; see also Muldrow v. Davis, No. 4:08-CV-109-SPM, 2009 WL 903281, at *4 (N.D. Fla. Mar. 30, 2009) (stockholders do not have standing to bring § 1983 derivative claim on behalf of corporation). Moreover, "to have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but also must be part of the class and possess the same interest and suffer the same injury as the class members." Mills v. Foremost Ins. Co., 511 F.3d 1300, 1307 (11th Cir. 2008).

In the instant case, Plaintiffs rely solely on their positions as shareholders as a basis for standing in maintaining their § 1983 claim. At most, Plaintiffs' interest in Defendant Tama is economic; that interest, without more, does not give Plaintiffs' standing to assert claims on behalf of the corporation pursuant to 42 U.S.C. §§ 1981 and 1982. Therefore, it follows that Plaintiffs are precluded from pursuing Count II on behalf of the class because Plaintiffs do not have individual standing and this count should be dismissed.

### 3.   Violations of   Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5

In Counts III and IV, Plaintiffs allege, based upon their shareholder status, that Tama has been the victim of securities violations perpetrated by the Zwirn Defendants (Dkt. 25 at ¶¶ 65-77).

On September 5, 2008, the Supreme Court of the State of New York appointed a Temporary Receiver over Tama and its assets (Dkt. 46-2).[6]  Claims for recovery of assets of a corporation for

_____

1206, 1209 (11th Cir. 1981) (en banc).

[6]  Defendants filed a copy of the state court order appointing the temporary receiver for Tama with their motions to dismiss (Dkt. 46-2; Dkt. 90-2). Because Plaintiffs referenced the appointment of receivers in their Amended Complaint, attached a copy of the order to their response, and do not

which a receiver has been appointed must be asserted in the name of the receiver, and not by the stockholder. Garner v. Pearson, 374 F. Supp. 591, 597 (M.D. Fla. 1974). When a receiver has been appointed, the stockholder is prevented from asserting a right of the association in his own name, even if the benefits of such action will benefit the stockholder. Id.; see In re U.S. Oil & Gas Litig., No. 83-1702-A1-Civ-Hoeveler, 1988 WL 28544, at * 1, 5 (S.D. Fla. Feb. 8, 1988) (court appointed receiver had standing to bring claims for securities fraud under Rule 10b-5). Therefore, Plaintiffs have no standing to assert securities fraud claims against Defendants and Counts III and IV should be dismissed.

### 4.    Violations of the Federal Communications Act

Plaintiffs allege in Count VI that Defendants attempted to cause the premature transfer or control of a FCC license and proposed the transfer of a bare FCC license (Dkt. 25 at ¶ 86). Specifically, Plaintiffs allege that Defendants violated § 310(d) of the Federal Communications Act, 47 U.S.C. § 151, et. seq., and the FCC's "bare license" policy when Defendants "proposed to separate the physical assets of a radio station from its license, attempted to take premature control of the license, and attempted to cause the transfer of an FCC license to an entity with more alien ownership" (Id. at ¶¶ 86-88).

Section 310(d) of the Federal Communications Act provides in relevant part that:

---

dispute the contents or authenticity of the order (Dkt. 25 at ¶ 36(d), Dkt. 55 at 2, Dkt. 106-2), the court may properly consider the state order when ruling on Defendants' motions to dismiss and conversion to summary judgment proceedings is unnecessary. See Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284-85 (11th Cir. 2007).

No construction permit or station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby.

47 U.S.C. § 310(d).

While Plaintiffs' allegations are accepted as true, Plaintiffs fail to allege that Tama's license was transferred or assigned by Defendants, directly or indirectly, without prior consent of the FCC.[7] Also, Plaintiffs state that Defendants "attempted" to take control of the license, "attempted" to transfer the license, and "proposed" to separate the physical assets from the license. Section 310(d) on its face does not proscribe attempts. Assuming arguendo that § 310(d) creates a private right of action, Plaintiffs' allegations fall short of alleging a claim upon which relief may be granted and Count VI should be dismissed.

### 5.    **Breach of Fiduciary Duties**

Plaintiffs allege in Count VII that Defendants aided and abetted breaches of fiduciary duties (Dkt. 25 at ¶¶ 89-93). In particular, Plaintiffs allege Defendants BE/GS Investors, BE/GS Partners and Williams knew that the Zwirn Defendants "were engaged in breaches of fiduciary duty and other misconduct" (Id. at ¶ 91.) Plaintiffs further allege that "[a]ll Defendants gave substantial assistance and encouragement to the breaches of fiduciary duty" (Id. at ¶ 92).

To allege a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must establish

---

[7]  Nor do Plaintiffs allege that a transfer or assignment of the license occurred.

(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of the breach by the alleged aider and abettor, and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. <u>AmeriFirst Bank v. Bomar</u>, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991).

Central to this claim, Plaintiffs must allege the existence of a fiduciary relationship on the part of Defendants. Fiduciary relationships may be express or implied. <u>Maxwell v. First United Bank</u>, 782 So. 2d 931, 933-34 (Fla. 4th DCA 2001). Plaintiffs do not allege an express agreement providing a fiduciary relationship nor do they provide any facts to support an implied fiduciary relationship. Alleging a breach of a fiduciary relationship, without more, does not state a claim for relief. Count VII should be dismissed for failure to state a claim upon which relief can be granted.

### 6. "Improvident Lending"

Plaintiffs allege in Count VIII that the Zwirn Defendants breached their duty of care and improvidently lent funds to Tama and other similarly situated borrowers. Plaintiffs fail to cite any Florida statute or case law recognizing this cause of action. Rather, Plaintiffs rely on <u>In re OODC, LLC</u>, 321 B.R. 128, 146-47 (Bankr. D. Del. 2005), as authority to assert a claim for improvident lending. However, the same bankruptcy court later rejected the claim of improvident lending. <u>In re Fedders N. Am., Inc.</u>, 405 B.R. 527, 551-52 (Bankr. D. Del. 2009). Likewise, other courts have held that such a cause of action does not exist. <u>Price v. EquiFirst Corp.</u>, No. 08-1860, 2009 WL 917950, at *8 (N.D. Ohio Apr. 1, 2009) (summarily rejecting "improvident lending" as a cause of action under Ohio law); <u>In re Fordham</u>, 130 B.R. 632, 648 (Bankr. D. Mass. 1991) (citing cases which deny claims

for negligent underwriting of loans through loose internal lending standards and poor business judgment).

Furthermore, even if improvident lending was a viable cause of action, Plaintiffs have failed to allege in their complaint that Zwirn made any representations to the Plaintiffs that would violate a duty of care owed. See Fedders, 405 B.R. at 552. Plaintiffs allege only that Zwirn "knew that there was inadequacy of consideration and inability to repay in connection with the loans made to [Tama]" (Dkt. 25 at ¶ 95). Therefore, Plaintiffs fail to state a cause of action upon which relief can be afforded and Count VIII should be dismissed.

### 7. Breach of the Covenant of Good Faith and Fair Dealing Claim

In Count IX, Plaintiffs allege that the lending and collection practices of the Zwirn Defendants breached the covenant of good faith and fair dealing (Dkt. 25 at ¶¶ 98-101). While Florida law recognizes a duty of good faith in every contract, there is no independent cause of action under Florida law for breach of the implied covenant of good faith and fair dealing. Burger King Corp. v. Weaver, 169 F.3d 1310, 1316 (11th Cir. 1999). "[A] cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express terms of an underlying contract" Id. at 1318. Thus, a claim for breach of the covenant of good faith and fair dealing cannot be sustained unless there is also a breach of a contractual obligation. Id. at 1316-18.

Plaintiffs do not assert that Defendants breached a covenant of any agreement. Instead, Plaintiffs allege that the Zwirn Defendants used Tama's assets for ultra vires purposes and/or for the

personal benefit of Defendants and their subsidiaries (Dkt. 25 at ¶ 100). Plaintiffs also contend that the Zwirn Defendants engaged in waste of corporate assets and <u>ultra</u> <u>vires</u> acts (<u>Id.</u> at ¶ 101). Thus, no breach of contract is alleged and Count IX is subject to dismissal.

8. **Breach of Contract and Tortious Interference with Existing and Prospective Business Relationships**

In Count X**,** Plaintiffs assert that Defendants interfered with contractual relationships, thereby causing a tort. Tortious interference with a business relationship requires a plaintiff to allege: (1) the existence of a business relationship, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship, and (4) damage to the plaintiff as a result of the relationship. <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So. 2d 812, 814 (Fla. 1994). Here, Plaintiffs allege the existence of contractual relationships between Tama and its unsecured creditors but fail to allege how the Zwirn Defendants intentionally and unjustifiably interfered with the contractual relationship. At most, Plaintiffs claim the Zwirn Defendants "caused funds owed to [Tama] to be paid directly to [Zwirn]" (Dkt. 25 at ¶ 104).

Plaintiffs allege in Count XI tortious interference with prospective business relationships by Defendants (Dkt. 25 at ¶¶ 105-108). The elements for this tort are nearly the same as the tortious interference with a business relationship, except plaintiff must allege facts supporting prospective legal or contractual rights. <u>Ethan Allen</u>, 647 So. 2d at 814. Once again, Plaintiffs fail to set forth any specific facts establishing the prospective business relationships with which Defendants interfered. Plaintiffs' allegation that "there were reasonable expectations of prospective financial benefits between [Tama] and its unsecured creditors" is insufficient to assert a claim of tortious interference

with prospective business relationships. See Brumer v. HCA Health Servs. of Fla., Inc., 662 So. 2d 1385, 1386 (Fla. 4th DCA 1995) (plaintiff's claim for tortious interference with a prospective business dismissed because of the failure to plead with specificity as to the particular relationship interfered with). Therefore, Plaintiffs' conclusory allegations will not suffice and these counts must be dismissed.

### 9. Claim of Deceptive Practices

Plaintiffs allege that Defendants violated "various, state, deceptive and unfair practices, acts and laws, to be described with more particularity following class certification and identification of class members"(Dkt. 25 at ¶ 110). It is not the duty of the court to identify which laws Defendants could possibly have violated. Plaintiffs are required to specify which laws Defendants violated. To suggest that this court will allow Plaintiffs to amend their complaint for a second time if their motion for class certification is granted is totally without merit (See Dkt. 25 at ¶ 110). Count XII does not state a claim for relief as it contains only a bare recitation of the legal requirements for alleging deceptive practices.

### 10. Florida Whistle-Blower Act, Fla. Stat. § 448.102 Claim

Plaintiffs allege in Count XIII that Defendants violated section 448.102(1) and (3) of the Florida Whistle-Blower Act when CEO Glenn Cherry was fired from his position at Tama (Dkt. 25 at ¶¶ 113-16). Plaintiffs further contend that in retaliation against Glenn Cherry for filing a complaint with the FCC and "for attempting to adhere to his responsibility" as CEO of Tama "to maintain ultimate control over the stations' personnel, finances and programming," Defendants BE/GS, Scott,

Williams and Bolton allegedly conspired with the Zwirn Defendants to remove Glenn Cherry as CEO of Tama (Dkt. 25 at ¶¶ 23, 114).

The Florida Whistle-Blower Act prevents an employer from retaliating against an employee when the employee has disclosed or threatened to disclose information to the government when an employer has violated federal law. Fla. Stat. § 448.102 (2009). At a minimum, Plaintiffs must allege the existence of an employer-employee relationship. Id. To sustain a whistle-blower claim, an employee must establish, in writing, that he "brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice" Fla. Stat. § 448.102(1) (2009). Pursuant to section 448.102(3), an employee must have "objected to, or refused to participate in, any activity, policy, or practice of the employer which in violation of a law, rule, or regulation" Fla. Stat. § 448.102(3) (2009).

Plaintiffs allege only that Glenn Cherry was an employee of Tama. Consequently, Plaintiffs' claims against the other Defendants must be dismissed for failure to allege an employer-employee relationship.

In reference to Plaintiffs' claims against Tama, Plaintiffs have not alleged that Glenn Cherry advised Tama, in writing, about the retaliatory firing or that Glenn Cherry provided Tama a reasonable opportunity to correct the action. See Golf Channel v. Jenkins, 752 So. 2d 561, 564-65 (Fla. 2000) (employee required to give written notice to employer as prerequisite to filing a lawsuit). Similarly, Plaintiffs fail to allege that Glenn Cherry objected to, or refused to participate in, any activity, policy, or practice of Tama which violated a law, rule, or regulation. Therefore, Count XIII

should be dismissed.

### 11.    Unjust Enrichment Claim

In Count XIV, Plaintiff Group Assets contends that Defendants have been unjustly enriched by utilizing Plaintiffs' radio and transmitter sites without paying rent (Dkt. 25 at ¶ 117).  Plaintiff Group Assets asserts it owns or controls certain studio and transmitter sites and was damaged by Defendants' failure to pay rent for the use of these properties (Id. at ¶¶ 118-119).  Although Plaintiffs assert that they are bringing a derivative suit on behalf of Tama, Plaintiff Group Assets does not assert that it is a shareholder in Tama.  As such, Plaintiff Group Assets is asserting a direct claim against Defendants.

"[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."  Ocean Commc'ns, Inc. v. Bubeck, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007).  A claim for unjust enrichment is based on a legal fiction created by courts to imply a contract.  Tooltrend, Inc. v. CMT Tools, 198 F.3d 802, 805 (11th Cir. 1999).  As such, a claim for unjust enrichment derives not from a "real" contract but a "quasi-contract."  Id.

Plaintiff Group Assets asserts that Defendants, "in violation of the relevant agreements, utilized these sites without paying rent" (Dkt. 25 at ¶ 119).  As Plaintiff's unjust enrichment claim relies solely on the existence of an express contract, these allegations preclude a claim for unjust enrichment. Therefore, Count XIV should be dismissed.

## III.    DISMISSAL PURSUANT TO RULE 12(b)(7) AND RULE 19

Although several counts in the Amended Complaint are subject to dismissal under Rule 12(b)(6), Fed. R. Civ. P., dismissal is justified on other grounds as well.

## A. <u>Standard of Review</u>

A court must decide, under Fed. R. Civ. P. 19(a), whether a party at issue is one who should be joined if feasible. <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1279-80 (11th Cir. 2003). If the court concludes that a party is necessary under Rule 19(a) but cannot be joined, the court must apply the factors in Rule 19(b) and ascertain whether the party is indispensable or if the litigation may continue in that party's absence. <u>Id.</u> at 1280. Rule 19 requires the court to make a two-part inquiry to determine if a party must be joined in a lawsuit so that complete relief can be afforded to the plaintiff and the defendant is not subject to multiple liability. <u>Challenge Homes, Inc. v. Greater Naples Care Ctr.</u>, 669 F.2d 667, 669-70 (11th Cir. 1982). It is well settled that where a receiver has been appointed for a corporation the receiver is an indispensable party to a stockholder's derivative action. <u>Coyle v. Skirvin</u>, 124 F.2d 934, 938 (10th Cir. 1942). It is the receiver's responsibility to enforce all the rights of the corporation and it is the corporation's right to seek damages against those that wronged the corporation. <u>Porter v. Sabin</u>, 149 U.S. 473, 478 (1893). If a receiver fails to enforce the rights of a corporation, then a shareholder should properly sue the receiver because the receiver has failed to perform. <u>Id.</u>; <u>see also</u> <u>Crutcher v. Aetna Life Ins. Co.</u>, 746 F.2d 1076, 1080 (5th Cir. 1984) (If the receiver is absent from the litigation, a court's "decree would not bind the receiver, thus running the risk of inconsistent obligations being imposed upon persons and property").

**B.     Discussion**

The Zwirn Defendants and Tama ask this court to dismiss the Amended Complaint due to the Plaintiffs' failure to join the court-appointed Receiver of Tama ("Receiver") as an indispensable party.[8]  Plaintiffs argue that the Receiver is not a necessary party to the litigation.  Moreover, Plaintiffs assert that even if the Receiver is an indispensable party with regard to Rule 19, a state court appointed receiver cannot prevent Plaintiffs from seeking relief in a federal court.

Plaintiffs concede that they have not joined the Receiver nor have they asked the New York state court for consent to join the Receiver as a party in this court (Dkt. 55 at 12-13).  The Receiver is an indispensable party as it is needed in order to afford the monetary relief Plaintiffs have requested from Defendants.  Not only must the Receiver be joined; Plaintiffs must also secure permission from the New York state court to proceed in this court.  If the Receiver is not joined, Defendants face a substantial risk of multiple inconsistent obligations.

Plaintiffs cite Dewitt v. Daley, 336 B.R. 552 (S.D. Fla. 2006), a case which decided that a receiver was not an indispensable party.  However, Plaintiffs' reliance on this case is ill-founded.  Dewitt concerned a claim against a corporate officer individually, not against the corporation.  Id. at 556.  Therefore, the receiver was not necessary in the litigation as the corporation was not a party.

Plaintiffs' final argument suggests that the Supremacy Clause of the U. S. Constitution precludes dismissal of a federal action due to the absence of a state appointed receiver. Plaintiffs cite

---

[8]  Although the Zwirn Defendants move for dismissal pursuant to Fed. R. Civ. P. Rule 23.1 and Rule 23.1, Del. Ch. Ct. R., they also contend that Plaintiffs failed to join the Receiver as an indispensable party (Dkt. 46 at 6).

Donovan v. City of Dallas, 377 U.S. 408, 412-13 (1964), as support for their position. Donovan held that "state courts are completely without power to restrain federal-court proceedings in in personam actions." Id. at 413. However, a state court which has custody of property and is acting pursuant to in rem or quasi in rem jurisdiction maintains exclusive jurisdiction. Id. at 412. Here, the state court appointed a receiver to take control over Tama's assets and the appointment of a receivership is an in rem or quasi in rem proceeding; therefore, the state court retains jurisdiction over the receivership. Accordingly, Plaintiffs must seek consent of the state court to join the Receiver in this action.

For these reasons, pursuant to Rule 12(b)(7) and Rule 19, Fed. R. Civ. P., it is recommended that the Amended Complaint be dismissed as to the Zwirn Defendants and Tama.

## IV. DISMISSAL PURSUANT TO RULE 23.1

### A. Standard of Review

As Tama is a Delaware corporation, Rule 23.1, Delaware Chancery Rules, governs the extent of the derivative suit demand requirements. Stepak v. Addison, 20 F.3d 398, 402 (11th Cir. 1994). As a prerequisite to a shareholder derivative suit under Delaware law, an aggrieved shareholder must make a demand upon the board to take the desired action. Id. (citing Spiegel v. Buntrock, 571 A.2d 767, 772-73 (Del. 1990)). Delaware law requires a derivative plaintiff to satisfy more stringent pleading requirements than the notice pleading regime of Rules 8 and 12(b)(6). Stepak, 20 F.3d at 402. A complaint must allege with particularity the efforts, if any, made by the plaintiffs to obtain the action desired from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

Del. Ch. Ct. R. 23.1.  Alternatively, a shareholder may plead that the demand is excused because it

is futile to make the demand. <u>Stepak</u>, 20 F.3d at 402 (citing <u>Levine v. Smith</u>, 591 A.2d 194, 200 (Del.

1991)).  Therefore, to satisfy Rule 23.1, a plaintiff must make a demand and allege he was wrongfully

denied by the receiver, not the corporate directors.  <u>Thornton v. Bernard Techs., Inc.</u>, C.A. No. 962-

VCN, 2009 WL 426179, at *4 n.31 (Del. Ch. Feb. 20, 2009)

Analogous to Delaware law, federal law requires that a shareholder, when filing a derivative

suit, must make a demand upon the receiver and get the permission of the receivership's court in order

to proceed or face dismissal.  <u>In re Sunrise Sec. Litig.</u>, 916 F.2d 874, 879 (3d Cir. 1990) (The claim

"may be brought by plaintiffs only as a derivative claim, following an unsuccessful demand on the

receiver").[9]

**B.    <u>Discussion</u>**

The Zwirn Defendants and Tama argue that this court should grant their motions to dismiss

because Plaintiffs failed to make a demand on the Receiver before filing this derivative action.

Plaintiffs allege in the Amended Complaint that they "have made demand on the [Tama]

board to bring this action.  The parties controlling [Tama], the BE Defendants, have refused" (Dkt.

25 at ¶ 5).  However, Plaintiffs have made their demand upon the wrong party.  Plaintiffs do not

dispute that a Receiver has been appointed for Tama's assets.  To satisfy the pleading requirements

of Rule 23.1, Plaintiffs must allege that they made a demand on the Receiver or that such a demand

---

[9] Defendant Tama argues that this court should grant its motion to dismiss because Plaintiffs failed to follow the demand requirements of Rule 23.1, Fed. R. Civ. P.  (Dkt. 104 at 9).  Because Delaware law is nearly identical to the federal counterpart, the analysis of Plaintiffs' claims would be the same under state or federal law.

was futile. Plaintiffs fail to make such allegations.  Thus, Plaintiffs' allegation does not comply with

Rule 23.1.[10]

## V.   CONCLUSION

The Amended Complaint should therefore be dismissed.[11]

It is therefore **RECOMMENDED** that:

(1)   Defendants D.B. Zwirn Special Opportunities Fund L.P., Straight Way Radio, LLC,

Bernard Radio, LLC,  Daniel B. Zwirn, and Peter Lieberman's **Joint Motion to**

**Dismiss Amended Complaint** (Dkt.  46) be **GRANTED**;

(2)   Defendant Ted Bolton's **Motion to Dismiss, or Alternatively for a More Definite**

**Statement** (Dkt. 90) be **GRANTED**;

(3)   Defendant Tama Broadcasting, Inc.'s **Motion to Dismiss Amended Complaint** (Dkt.

104) be **GRANTED**;

(4)   Defendants Black Enterprise/Greenwich Street Corporate Growth Investors, LLC ,

---

[10]   The Zwirn Defendants also correctly state that Rule 23.1 requires the allegations to be verified (Dkt. 46 at 7 n. 2).  Rule 23.1 requires that derivative pleadings be verified so as to prevent those lawsuits brought solely for the purpose of harassment or to force a quick settlement.  Tuscano v. Tuscano, 403 F. Supp. 2d 214, 222 (E.D.N.Y 2005).  Plaintiffs' complaint has not been verified. That defect should also be cured if Plaintiffs are permitted to file an amended complaint.

[11]   Plaintiffs' assertion that Tama's counsel,  J. Carter Andersen ("Andersen") and the law firm of Bush Ross, have an alleged conflict of interest because Tama's counsel also represent Defendants BE/GS  Investors, BE/GS Growth Management, BE/GS Partners, Scott, and Williams is without merit based on the present record.  At the time Tama's motion to dismiss was filed, Andersen and Bush Ross represented other Defendants in this case.  After Tama's filing, the court granted Defendants' counsel's motion to withdraw their representation of Defendants BE/GS Investors, BE/GS Growth Management, BE/GS Partners, Scott, and Williams (Dkt. 146). Defendants BE/GS  Investors, BE/GS Growth Management, BE/GS Partners, Scott, and Williams have retained substitute counsel.  Thus,  Plaintiffs' argument is moot.

Black Enterprise/Greenwich Street Corporate Growth Partners, L.P., Jeffrey Scott, and

Ed A. Williams' **Joint Motion to Dismiss Amended Complaint** (Dkt. 157) be

**GRANTED**; and

(5)     If Plaintiffs are afforded an opportunity to file a second amended complaint, the

amended complaint should clearly state which counts are brought derivatively and

which are brought directly by Plaintiffs.

**Date: December 23, 2009**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in

this report within fourteen (14) days from the date of this service shall bar an aggrieved party from

attacking the factual findings on appeal.  See 28 U.S.C. 636(b)(1).