UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| DR. GLENN W. CHERRY, et al. | : | |
| Plaintiffs, | : | Case No. 8:09 CV-33-T33-EAJ |
| vs. | : | |
| | : | Judge Covington |
| D.B. ZWIRN SPECIAL OPPORTUNITIES FUND, L.P., et al. | : | Magistrate Judge Jenkins |
| Defendants. | : | |

## OBJECTIONS OF DR. GLENN W. CHERRY, CHARLES W. CHERRY II, AND GROUP ASSETS, LLC TO DECEMBER 23, 2009 REPORT AND RECOMMENDATION

In accordance with the provisions of 28 U.S.C. §636, Plaintiffs, Dr. Glenn W. Cherry, Charles W. Cherry II, and Group Assets, LLC, hereby respectfully object to the December 23, 2009 Report and Recommendation, Docket No. 173 (hereinafter the "Report"), entered in this action by Magistrate Judge Jenkins in its entirety.

The Plaintiffs object to each recommendation of Magistrate Judge Jenkins in relation to each of the seventeen claims pleaded by Plaintiffs due to the clearly erroneous nature of the Magistrate Judge's findings.

Plaintiffs specifically incorporate herein all arguments raised in their opposition to Defendants' Motions to Dismiss. Plaintiffs' arguments are set forth within Docket No. 55 which is attached as Exhibit A and specifically incorporated herein. In addition Plaintiffs object on the specific grounds set forth below.

A.  **STANDARD OF REVIEW**

The Magistrate Judge failed to apply the standard articulated in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009).  Although the Magistrate Judge cites <u>Ashcroft</u>, she did not apply its methodology.

<u>Ashcroft</u> states:

the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  [<u>Twombly</u>, 550 U.S. at 555] (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  550 U.S., at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.*, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *Id.*, at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id* at 556.  The plausibility standard is not skin to a "probability requirement," but it asks for more than a sheer possibility that  defendant has acted unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in <u>Twombly -</u> first, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged – but it has not "show[n]" – "that the pleader is entitled to relief."
Fed. Rule Civ. Proc. 8(a)(2).

As is pointed out in the discussion below, here Plaintiffs stated plausible claims against the Defendants. The Magistrate Judge's Report fails to engage in any "context-specific analysis." In other words, the Report failed to take into account the industry context within which these claims arise, or the circumstances currently confronting African-American broadcasters injured by the unscrupulous actions of predatory lenders such as D.B. Zwirn Special Opportunities Fund, L.P., aided by the remaining Defendants. The overall analysis of the Magistrate Judge lacks any context-specific component whatsoever and therefore does not reflect the type of judicial experience and common sense that Ashcroft requires in connection with a Fed. R. Civ. P. 12(b)(6) analysis.

The lack of any context specific analysis alone should result in the overruling of the Report and Recommendation.

**B.   RACIAL DISCRIMINATION UNDER 42 U.S.C. §§1981 AND 1982**

The Report and Recommendation's conclusion that Plaintiffs lack standing to pursue discrimination claims for Defendants' racial discrimination is erroneous. In CBOCS West Inc. v. Humphries, 128 S. Ct. 1951 (2008), the United States Supreme Court stated:

> A longstanding civil rights law, first enacted just after the Civil War, provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…as is enjoyed by white citizens." Rev. Stat. §1977, 42 U.S.C. §1981(a). <u>The basic question before us is whether the provision encompasses a complaint of retaliation against a person who has complained about a violation of another person's contract-related "right."</u> We conclude that it does. (Emphasis added.)

The Amended Complaint here alleges that Plaintiffs individually and the members of the putative class have suffered direct, nonderivative injuries due to the conduct of Defendants.  See, Flynn v. Merrick, 881 F.2d 446 (7th Cir. 1989).  The Amended Complaint here alleges a cognizable injury to Plaintiffs and the putative class that is separate and distinct from the injury caused to Defendant Tama Broadcasting, Inc. (TBI).  The Amended Complaint alleges that because of race, Defendant D.B. Zwirn Special Opportunities Fund, L.P. embarked upon a campaign to employ unconscionable and predatory contractual provisions to swindle African-American broadcasters out of radio licenses.  The Report and Recommendation fails to consider in any manner whatsoever, the opinion in CBOCS West, Inc. or the direct injuries alleged by Plaintiffs.

The holding in CBOCS West directly contradicts the Report and Recommendation's conclusion that Plaintiffs here lack standing to assert derivative claims under 42 U.S.C. §§1981 and 1982.  Moreover, the Report's authority for dismissing the 1981 and 1982 claim was based on an opinion concerning claims under 42 U.S.C. §1983, not the provisions relied upon by Plaintiffs.

By reason of the flawed analysis discussed above, the Magistrate Judge's Report and Recommendation should be overruled as it relates to the 42 U.S.C. §1981 and 1982 claims.

C. **SECURITIES ACT CLAIMS**

The Report and Recommendation erroneously states that securities claims must be brought in the name of the Receiver.  This is erroneous, among other reasons, for the reason the opinion relied upon by the Magistrate Judge, Garner v. Pearson, 374 F.Supp. 591 (M.D. FL 1974) applies to claims for the recovery of corporate assets.  The claims

4

here are not for the recovery of corporate assets. In light of this, the proper framework for decision should have been whether the Receiver is an indispensable party under Fed. R. Civ. P. 19, not whether the mere appointment of a Receiver requires the Receiver to be made a party to this action.

The Report and Recommendation also erroneously applies Florida substantive law to a federal securities claim. Not only is this analysis a violation of the Supremacy Clause as discussed in Plaintiffs' opposition to the motion to dismiss, it ignores the claim by the Receiver – asserted in his motion in New York state court for an order to show cause – that Plaintiffs are precluded from suing him. See, Exhibit B.

In addition, the Receiver in this case is the hand-picked agent of DBZ. DBZ pays his fees and sets his agenda. A demand on the Receiver would be futile. The Receiver is totally conflicted and is not operating in the best interests of TBI. See, Stepak v. Addison, 20 F. 3d 398 (14th Cir. 1994).

For these reasons and those cited above in relation to 42 U.S.C. §1981, the Report and Recommendation's conclusion that Plaintiffs have no standing to assert the securities fraud claims is erroneous and should be rejected by the District Court.

**D.     FEDERAL COMMUNICATIONS ACT**

The Report and Recommendation erroneously states that Plaintiffs failed to allege that Defendants <u>caused</u> the premature transfer of control of TBI's radio licenses. In this connection, the Report ignores the clear language of the Amended Complaint.

In point of fact, Paragraph 86 of the Complaint states "Defendants also violated federal law by <u>causing</u> the premature transfer of control of a FCC license." The allegation is not, as the Report erroneously concludes, that there was an attempt. The

5

Amended Complaint states very clearly that the Defendants <u>caused</u> the premature transfer of control.  In addition Paragraph 87 states Defendant <u>violated</u> the FCC "bare license" policy.  While Paragraph 88 makes reference to attempts and proposals, the actions identified in Paragraph 88 are separate and distinct from the completed actions referred to Paragraphs 86 and 87.  The Report and Recommendation fails to make this distinction and contrary to the standard for resolution of a Fed. R. Civ. P. 12(b)(6) motion, does not construe Paragraphs 86 and 87 in the light most favorable to Plaintiffs.  Any inconsistency between the language in Paragraph 86-88 should have been construed in the light most favorable to Plaintiffs.  The Report failed to do this and should be rejected.

E.     **BREACH OF FIDUCIARY DUTIES**

The Report and Recommendation does not follow the rule articulated in <u>Stepak, ex rel. Southern Co. v. Addision</u>, 20 F.3d 398 (11th Cir. 1994), because it erroneously states that Plaintiffs did not identify an express or implied fiduciary duty owed by Defendants to TBI.

Defendants Williams and Scott here are directors of TBI.  It is clear that under Delaware law, corporate directors are fiduciaries and as such owe a fiduciary duty of care to the corporation. The only reason DBZ was able to take premature control of TBI's licenses and wrongfully discharge Dr. Cherry was due to the failure of Williams and Scott to maintain control over the licenses and because of the conspiratorial acts of the Defendants  Lieberman, McMurray, Bolton, Zwirn, Bernard, Straightway and the BE/GS entities.  The interests of DBZ were exalted over those of TBI by all of these Defendants and the existence of other deals between Scott, Williams, BE/GS and DBZ caused TBI's interests to be subordinated to the selfish interests of BE/GS, Scott and Williams to

6

maintain business and personal relationships with DBZ and its agents, at the expense of TBI. Bolton, McMurray, Lieberman, Straightway and Bernard also conspired with DBZ to take control of TBI's licenses in advance of FCC permission by obtaining an unlawful Florida state court injunction, including perjured affidavits, to aid their illegal transfer of control. The Defendants all aided and abetted Scott's and Williams' violation of fiduciary duties to TBI by permitting DBZ to usurp control over TBI's licenses. See, Smith v. VanGorkom, 488 F.2d 858 (Del. 1985). The fiduciary duty here arises under Delaware corporate law. The Report ignores this.

Contrary to the conclusion of the Report, Delaware law clearly establishes a fiduciary relationship between Scott and Williams and TBI. The Defendants aided and abetted violation of this relationship by discharging Dr. Cherry and permitting DBZ to exercise ultimate control over TBI's personnel, finances and programming. The conclusion of the Report to the contrary is erroneous and ignores the plain language of the Complaint as well as the Eleventh Circuit's decision in Stepak, supra. The Amended Complaint alleges that Williams and Scott are TBI directors. Under Delaware law their fiduciary responsibility is a matter of law.

F. **IMPROVIDENT LENDING**

The Report misconstrues the elements of an improvident lending claim as articulated in In re. OODC, LLC, 321 B.R. 128 (B.R. Del. 2005) and In re. Fedders, 405 B.R. 527 (B.R. Del. 2009). Contrary to the Report's conclusion that Plaintiffs failed to plead facts that indicate DBZ owed a duty of care to TBI, Paragraph 96 of the Amended Complaint states unequivocally that DBZ owed a duty of care to TBI. Paragraph 96 states: "DBZ owed a duty of care in lending to TBI." The Report erroneously states that

7

it must be pleaded that DBZ made statements in order for Plaintiffs to state an improvident lending claim. The Report is erroneous in this connection. Under <u>Fedders,</u> an improvident lending claim may be established through conduct, not just words. The Report's conclusion that DBZ had to utter certain language is erroneous and should be overruled.

G.  **GOOD FAITH AND FAIR DEALING**

The Report erroneously alleges that the Amended Complaint does not allege a contractual violation. Paragraph 20 of the Amended Complaint states that Defendants caused the time brokerage agreement (TBA) in this matter to be violated. A TBA, also known as an "LMA" (Local Marketing Agreement), is a contract that is common in the radio industry that sets out specific terms and conditions required under Federal Communications Commissions rules and regulations. This is another example of the Report's failure to follow the industry-specific context requirement discussed in <u>Ashcroft</u>. Accordingly, the Report's contentions that Plaintiffs did not assert that Defendants breached a covenant in an agreement is erroneous. Defendants' usurpation of control was TBI's licenses violated the time brokerage agreement which tracks the requirements of 47 U.S.C. §310(d) prohibiting premature changes of control and was clearly alleged in the Amended Complaint. The Report is simply wrong in this connection and should be reversed.

H.  **TORTIOUS INTERFERENCE**

The Report fails to accord any weight to the numerous allegations in the Amended Complaint that DBZ took premature control of TBI's licenses and violated both the TBA and Federal Communications Act of 1934, 47 U.S.C. §310(d).

8

specifically, by taking premature control. DBZ interfered with all of TBI's contracts with third parties including Plaintiffs. For instance, DBZ usurped TBI's contract with Google, fired Dr. Cherry, breached the management contract with Cherry Group, LLC, violated leases with Group Assets, and wrongfully terminated Charles W. Cherry II as legal counsel, just to mention a few. The Amended Complaint clearly states that Defendants interfered with TBI's contracts with its unsecured creditors, including Plaintiffs.

I. **WHISTLEBLOWER CLAIM**

The Report and Recommendation is erroneous in its conclusions concerning the Whistleblower claim. The Report states "Plaintiff alleges only that Glenn Cherry was an employee of Tama." This statement is incorrect. The Complaint states:

> 20. DBZ has continuously since the third quarter of 2007 attempted to obtain, assert and exercise, and continues to exercise control over the TBI radio licenses, in violation of federal law, namely §310(d) of the Federal Communications Act.
>
> 21. In violation of their fiduciary duties and the relationship of special trust that exists between TBI and BE/GS, Defendants BE/GS, Bolton, Scott and Williams have aided and abetted DBZ's premature assumption of control over TBI.
>
> 22. In response to DBZ's premature assumption of control over TBI, Plaintiff Glenn Cherry filed a complaint with the FCC Enforcement Division. The Complaint was designated EB-08-IH-0692 by the FCC Enforcement Division. An active investigation concerning DBZ's premature assumption of control as a collection method and of its predatory lending behavior is currently ongoing at the FCC, a bogus consent decree having been entered that is now under review or reconsideration…
>
> 23. In retaliation against Plaintiff Glenn Cherry for attempting to adhere to his responsibility as CEO of TBI to maintain ultimate control over the stations' personnel, finances and programming, Defendants BE/GS, Scott, Williams and Bolton conspired with the DBZ Defendants, Straight Way, Bernard and McMurray to remove Plaintiff, Glenn Cherry, as TBI CEO.
>
> 24. Defendants Scott, Williams and BE/GS have caused BE/GS to violate the relationship of special trust and duties of good faith, loyalty, fidelity and care between TBI and BE/GS.

9

> 25. The DBZ Defendants, Straight Way, Bernard and McMurray have caused DBZ to violate the relationship of special trust and duties good faith, loyalty, fidelity and care between TBI and DBZ.
>
> ***
>
> 114. Defendants retaliated against Plaintiff Glenn Cherry in violation of §448.102(1)(3) for filing a complaint under the provisions of 28 U.S.C. §1746 with the FCC concerning DBZ's premature assumption of control of TBI's radio licenses.
>
> 115. By reason of the FCC Complaint, Plaintiff Glenn Cherry was fired from his position as TBI CEO and has been damaged by reason of Defendants' violation of the Florida Act the Whistleblower's Statute.

These paragraphs established that Dr. Cherry brought the premature change of control to the attention of all Defendants as early as the third quarter of 2007. The actual complaint filed with the FCC EB-08-IH-0692 was not filed until the second quarter of 2008, providing Defendants with ample opportunity to cease and desist. Dr. Cherry clearly objected to the premature change of control and was compelled by an unlawful state court injunction to permit DBZ subsidiary Straight Way Radio to control the TBI licenses.

The Report wrongfully focuses upon the requirement to advise the Defendants in writing about the retaliatory firing. That is not the issue here. The issue here is that Dr. Cherry advised the Defendants in writing about the premature change of control, not his firing. The Report totally misses this point, and should therefore be rejected.

**J.    DISMISSAL UNDER FED. R. C. P. 12(B)(7) AND RULE 19**

The Report also wrongfully applies the pertinent standard concerning whether the Receiver must be made a party here. The mere appointment of a Receiver does not automatically require the Receiver be made a party to a derivative action, especially where as here the Receiver contends he is not amenable to suit. See, Exhibit B.

In the instant case, the Receiver has a conflict of interest and a financial incentive to clock the maximum number of billable hours before he is eventually discharged. The Receiver was hand-picked by DBZ, TBI's senior creditor, paid by DBZ, has never met with the TBI board. Because of his preexisting relationship with DBZ, the Receiver is merely DBZ's agent, not someone actually protecting TBI's interests.

Fed. R. Civ. P. 19 controls, and contemplates a two-part test for determining whether a party is indispensable. <u>Focus on the Family v. Pinellas Suncoast Transit Authority</u>, 334 F.3d 1263, 1279 (11th Cir. 2003). First, the court must decide, under the standard articulated in Rule 19(a), whether the party at issue is one who should be joined if feasible. *Id*. at 1280. If this question is answered in the negative, no further analysis is needed and the litigation continues. If the court concludes that the party is necessary under 19(a) but cannot be joined, it must then ascertain, applying the factors in Rule 19(b), whether the party is indispensable or if the litigation may continue in that party's absence. <u>Challenge Homes, Inc., Greater Naples Care Ctr., Inc.</u>, 669 F.2d 667, 669 (11th Cir. 1982). In making the first determination – *i.e.*, whether the party in question "should be joined," "<u>pragmatic concerns, especially the effect on the parties and the litigation, control</u>." *Id.* (emphasis added, internal quotations omitted).

The proposition that the Receiver here is indispensable does not pass even the first part of this Rule 19 test. There is no showing that there is a "'substantial risk of multiple liability'" to the Receiver if he is not joined. See, <u>Dewitt v. Daley</u>, 336 BR 552 (S.D. Fla. 2006) (court found that neither the receiver nor the trustee had to be joined under Rule 19(a) because proponent failed to show how officer would be placed at a

11

"substantial risk of incurring double, multiple, or otherwise inconsistent obligations") (quoting Fed. R. Civ. P. 19(a)).

The dismissal of this federal litigation due to the absence of a state-court-appointed receiver must also be rejected as contrary to the Supremacy Clause[1] of the United States Constitution. In a trilogy of cases, the United States Supreme Court has made clear that under the Supremacy Clause, state courts are without power to prevent litigants from commencing or prosecuting actions in federal forums. In Donovan v. City of Dallas, 377 U.S. 408, 412-413, 84 S. Ct. 1579, 12 L. Ed. 2d 409 (1964), the court noted "the old and well-established judicially declared rule" that "state courts are completely without power to restrain federal-court proceedings in personam actions."

In General Atomic Co., v. Felter, 434 U.S. 12, 98 S. Ct. 76, 54 L.Ed. 2d 199 (1977), the court found that a state court's antisuit injunction directly conflicted with Donovan and the Supremacy Clause. General Atomic, supra, 434 U.S. at 15. The court stressed in General Atomic Co. v. Felter that the holding in Donovan "was premised on the fact that the right to litigate in federal court is granted by Congress and, consequently, 'cannot be taken away by the State.'" Id. at 16. The court also expressly rejected the argument that Donovan only precluded state courts from enjoining pending federal litigation but permitted state-court injunctions against the filing of additional suits in federal court. The court stated; "It is therefore clear from Donovan that the rights conferred by Congress to bring in personam actions in federal courts are not subject to abridgment by state-court injunctions, regardless of whether the federal litigation is pending or prospective." General Atomic, supra, 434 U.S. at 17. Then, in General

---

[1] U.S. Const. art. 6 provides in pertinent part: "This Constitution, and the laws of the United States which shall be made in pursuance thereof…shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

Atomic Co. v. Felter, 436 U.S. 493, 497 98 S. Ct. 1939, 56 L. Ed. 2d 480 (1978), the court reaffirmed that a state court was "without power under the United States Constitution to interfere" with efforts by a litigant to obtain arbitration in federal forums since a party "has an absolute right to present its claims to federal forums." (emphasis added).

The foregoing decisions document an evolution in Supreme Court thinking from the well-recognized principles of judicial comity "that state and federal courts would not interfere with or try to restrain each other's proceedings" (Donovan, supra, 377 U.S. at 412), to an outright declaration that under the Supremacy Clause a litigant "has an absolute right to present its claims to federal forums" and that a state court is "without power" to interfere with that right (General Atomic Co. v. Felter, supra, 436 U.S. at 497). The language of the two General Atomic decisions, in particular, is quite broad. See, General Atomic, supra. 434 U.S. at 17; General Atomic Co. v. Felter, supra, 436 U.S. at 497. Consistent with the Supremacy Clause and the forgoing decisional authority, the continuation of this federal action cannot be prevented by the absence of, or made contingent upon, the state-court-appointed Receiver. See *id*.; see also, Jordan v. Independent Energy Corp., 446 F. Supp. 516, 525 n. 14 (N.D. Tex. 1978) (Supremacy Clause dictates that bankruptcy proceedings supersede pending state proceedings).

## K.    SUMMARY

The Report manifests an overarching failure to adhere to the rule established in Ashcroft that a context-specific framework be observed in connection with resolution of a motion to dismiss, construing all inferences in favor of the nonmoving party. Here, the

Report ignores clear language within the Amended Complaint and fails to apply the plausibility standard required.

The Report and Recommendation should be rejected. The Motions to Dismiss should be overruled. More than two years after instituting these claims against Defendants, Plaintiffs should finally be treated as equal citizens and accorded due process of law, something that to date has not occurred.

        _s/Charles W. Cherry II, Esq._
        Charles W. Cherry II, Esq.
        5200 SW 18th St.
        Plantation, FL 33317
        Facsimile: (954) 583-9667
        CCherry2@aol.com

        Of counsel:
        PERCY SQUIRE (0022010)
        PERCY SQUIRE CO., LLC
        514 S. High Street
        Columbus, Ohio 43215
        Telephone: (614) 224-6525
        Facsimile: (614) 224-6529
        psquire@sp-lawfirm.com
        Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties on the attached service list as indicated by electronic mail via the Court's Electronic Document Filing System January 6, 2010.

        _s/Charles W. Cherry II, Esq._
        Charles W. Cherry II, Esq.